J-S17038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZAKKEE S. ALHAKIM | : | |
| | : | |
| Appellant | : | No. 1305 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004578-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JULY 18, 2025**

Appellant, Zakkee S. Alhakim, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for first-degree murder, criminal conspiracy, and possessing instruments of crime ("PIC").[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this appeal as follows:

> On April 11, 2023, at around 7:35 a.m., Officer Tierre Welton of the 35th District Philadelphia Police Department was with his partner, in uniform and in their patrol car, headed to breakfast in Melrose Shopping Center. There Officer Welton observed a woman running across Cheltenham Avenue to tell them she heard gunshots coming from the area of a black Ford vehicle at the Dunkin' Donuts. The officer approached that vehicle and saw that the victim

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 903, and 907, respectively.

was deceased and that a child was in the back seat crying.[2]

Detective Terrence Lewis of the Montgomery County Detective Bureau—Forensic Services Unit collected fired cartridge casings ("FCC's") at the scene. The FCC's were from a semiautomatic weapon. All of the FCC's were the same caliber, .9 millimeter Ruger.

Detective Ryan Murray of the Cheltenham Township Police Department testified that surveillance footage from April 11, 2023, around the murder scene depicted a silver-colored sedan following closely behind the victim's car as she was heading to the Dunkin' Donuts. The video captured an individual approach the victim's car, run back to the silver sedan, and drive out of the shopping center onto Cheltenham Avenue. The silver sedan was determined to be a Mercury Sable.

Additional surveillance footage traced the Mercury Sable back to the victim's residence earlier in the morning on April 11, 2023. The Mercury Sable arrived there around 7:00 a.m. and followed the victim's car from her residence to the scene of the shooting. From one of the surveillance cameras Detective Murray obtained the license plate from the Mercury Sable. An image of the Mercury Sable was released to the public and the vehicle was later recovered by Philadelphia police. Cell phone location evidence corroborated that [Appellant's] cell phone traveled the same path traveled by the Mercury Sable that morning.

Surveillance footage also depicted that several days prior to the murder on April 7, 2023, the Mercury Sable was on the victim's street and drove past her residence twice. [Appellant's] cell phone location data also corroborated that his cell phone traveled this same path.

_____

[2] At trial, counsel further explored Officer Welton's observations from the day of the shooting. During cross-examination, Appellant's co-defendant's attorney asked, "And nothing about your investigation on that particular morning suggested to you, sir, that [Appellant's co-defendant] was out there in the Dunkin' Donuts or in any way with [Appellant], right?" (N.T. Trial, 3/18/24, at 70). Appellant's counsel objected to the question. As we will discuss *infra*, the trial court overruled the objection.

William Hayes testified that he and the victim were neighbors, he had known her for several years, and in 2020, their friendship turned into a romantic relationship. They started dating [in] late 2020. Mr. Hayes also testified that he met [Appellant's co-defendant, Julie Jean,] through the childcare center where he had worked, in late 2020, 2021. Towards the end of 2021, his relationship with [Ms.] Jean turned into a sexual relationship, when he and the victim were briefly not together. The victim did not know about his relationship with [Ms.] Jean. At some point, Mr. Hayes wanted to end his relationship with [Ms.] Jean and move forward with the victim. [Ms.] Jean did not take it well and started to harass him.

Around December 5, 2022, the victim found out about [Ms.] Jean. On December 7, 2022, Mr. Hayes obtained a protection from abuse order ("PFA Order") against [Ms.] Jean. After a hearing was held on December 15, 2022, the PFA Order was continued until September 15, 2023. The victim attended the hearing [with] Mr. Hayes, and on their way out of the hearing there was a verbal altercation between the victim and [Ms.] Jean. Police had to break it up. Even after the PFA Order, [Ms.] Jean continued to contact Mr. Hayes.

Several hours after the PFA hearing, phone records showed that [Ms.] Jean contacted Perry Mattison, one of her children's father, and there were several communications between them that day. About two months later, on February 14, 2023, Mr. Mattison provided [Ms.] Jean with [Appellant's] contact information, which she saved to her phone.

Over the next several months, cell phone records showed [Ms.] Jean provided [Appellant] information about the victim, what she looked like, and where she lived. On February 20, 2023, [Appellant's] phone had screenshots of the victim and of her residence. On February 25, 2023, there was an image of the victim, which had been originally taken on [Ms.] Jean's phone.

[Appellant's] phone records showed that he plotted out the route to the victim's home and that he drove past her

residence several times prior to the murder. On April 7, 2023, there was voice guided step-by step directions in Google Maps to the victim's address on [Appellant's] phone. Internet searches on [Appellant's] phone showed that on April 10th and 11th there were searches for .9-millimeter ammunition and where to buy it in Philadelphia.

[Ms.] Jean and [Appellant] met up several times. In particular, on March 30, 2023, about two weeks before the murder, [Appellant] went with [Ms.] Jean, and [Ms.] Jean purchased a Mercury Sable vehicle. This was the same Mercury Sable that [was] involved in the murder.

[Appellant] was developed as a suspect in the April 11, 2023 murder by Detective Joseph Cremen, a detective with the Philadelphia Police Department. [Appellant] had been involved in a prior shooting on April 7, 2023 in Philadelphia in which a Mercury Sable was used [("the Philadelphia shooting")]. The detective later determined that the Mercury Sable in the April 7th incident was the same one that was seen at the Dunkin' Donuts on April 11th.

Detective Eric Nelson of the Montgomery County Detective Bureau testified as an expert in firearms and tool marks. He examined the FCC's collected at both the Philadelphia shooting and at the Dunkin' Donuts following this murder. He also had the FCC's from the victim's car. After the detective conducted a microscopic comparison of the FCC's found at both locations and from the victim's car, he determined that they were all fired from the same gun.

(Trial Court Opinion, filed 10/23/24, at 2-6) (record citations omitted).

On April 24, 2023, the Commonwealth filed a criminal complaint charging Appellant with first-degree murder, conspiracy, and related offenses. The Commonwealth subsequently filed a notice of joinder to consolidate the charges against Appellant and Ms. Jean for trial. On January 9, 2024, the Commonwealth filed a motion to admit evidence of prior bad acts regarding the Philadelphia shooting. By order entered January 17, 2024, the court

granted the Commonwealth's motion as follows:

> [E]vidence of [Appellant's] involvement in the April 7, 2023, shooting in Philadelphia is admissible as to the identification of [Appellant], the ballistic evidence collected, and the vehicle involved. The probative value of this evidence far outweighs any prejudice to the defendants. However, the nature of the charges resulting from that shooting shall not be admissible, specifically, it is not admissible that [Appellant] was charged with homicide. To identify the shooting as a homicide would be unduly prejudicial. Rather, it shall only be referred to as "a shooting."

(Order, filed 1/17/24).

On March 21, 2024, a jury convicted Appellant of first-degree murder, conspiracy, and PIC. That same day, the court sentenced Appellant to an aggregate term of life imprisonment. Appellant subsequently filed a post-sentence motion, which the court denied on April 23, 2024. On May 7, 2024, Appellant timely filed a notice of appeal.[3] On May 13, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained

_____

[3] The docket from the Court of Common Pleas indicates that Appellant filed his post-sentence motion on April 23, 2024. *See* Pa.R.Crim.P. 720(A)(1) (requiring written post-sentence motion to be filed no later than ten days after imposition of sentence). Consequently, this Court issued a rule to show cause order directing Appellant to explain how his notice of appeal was timely. *See* Pa.R.Crim.P. 720(A)(2)(a) (requiring notice of appeal to be filed within thirty days of entry of order deciding **timely** post-sentence motion). In response, Appellant asserted that counsel electronically filed a timely post-sentence motion on March 28, 2024. (*See* Response to Show Cause Order, filed 5/23/24, at ¶2). Appellant's response included a copy of the original post-sentence motion, which the clerk of courts time stamped as filed on March 28, 2024. (*See id.* at Exhibit B). Thereafter, the clerk of courts requested that Appellant resubmit the filing. (*See id.* at ¶4). Appellant complied, and the clerk of courts did not docket the resubmitted post-sentence motion until April 23, 2024.

of on appeal. Following a delay due to the unavailability of certain transcripts, Appellant filed his Rule 1925(b) statement.

Appellant now raises four issues for this Court's review:

Whether the jury erred in finding Appellant guilty of first-degree murder and related offenses when the evidence at trial was insufficient to warrant a conviction.

Whether the jury erred in finding Appellant guilty of first-degree murder and related offenses when the verdict was against the weight of the evidence.

Whether the trial court erred in admitting evidence of a shooting by Appellant with the same gun days before the murder incident because the evidence was too prejudicial to allow the jury to make an impartial decision.

Whether the trial court erred by overruling Appellant's objection to co-counsel asking a non-identifying police officer that Appellant was at the crime scene on the day of the murder but not co-counsel's client, thus assuming an inadmissible fact not in evidence and thereby causing irreparable prejudice to Appellant.

(Appellant's Brief at 9).

Appellant's first two issues are related, and we address them together. Appellant contends that the Commonwealth failed to prove his involvement in the homicide at issue. Appellant maintains that the police could not place him at the crime scene, in the vehicle fleeing the crime scene, or in the vehicle near the victim's residence shortly before the murder. Regarding the cell phone data linking Appellant to these locations, Appellant posits that this evidence did not prove that he possessed the cell phone at the times in question. Further, Appellant emphasizes "there was absolutely no direct

evidence Appellant was involved in the murder," and the jury's conviction rested on the evidence linking him to the Philadelphia shooting. (*Id.* at 21). Appellant concludes that the Commonwealth presented insufficient evidence to support his first-degree murder conviction, and his conviction was against the weight of the evidence.[4] We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

_____

[4] Appellant makes no argument regarding the sufficiency or weight of the evidence supporting the convictions for conspiracy or PIC.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa.Super.

2013)).

In reviewing a challenge to the weight of the evidence, our standard of

review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted).

The Crimes Code defines first-degree murder as follows:

### § 2502. Murder

**(a)  Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

To find a defendant guilty of first-degree murder a jury must

find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.

It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide.

*Commonwealth v. Schoff*, 911 A.2d 147, 159 (Pa.Super. 2006) (internal citations and quotation marks omitted). "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Montalvo*, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert. denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa.Super. 2018) (quoting *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa.Super. 2010)). "[A] perpetrator's identity may be established with circumstantial evidence." *Commonwealth v. Dunkins*, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" *Id.* (quoting *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the trial court evaluated the Commonwealth's evidence as

follows:

> There was cell phone evidence that [Ms.] Jean was connected with [Appellant] through her child's father. This occurred within a two-month time frame after Mr. Hayes broke off his relationship with [Ms.] Jean to pursue one with the victim. Cell phone evidence established that [Ms.] Jean provided [Appellant] the victim's identity, victim's address, and directions to the victim's residence. Cell phone location data showed that [Appellant's] cell phone went past the victim's address prior to the murder, and that on the morning of the murder his cell phone was in the area of her residence. Both cell phone location data and surveillance video showed that [Appellant's] cell phone and the Mercury Sable associated with [Appellant] followed the victim to the area of the Dunkin' Donuts where she was murdered. Following the murder, [Appellant's] cell phone and Mercury Sable fled the scene. [Appellant] was also tied to this murder from the evidence of the Philadelphia shooting, the ballistics matched and the Mercury Sable matched, and [Appellant] had admitted to the Philadelphia shooting.

(Trial Court Opinion at 14-15). Our review of the record confirms this analysis.

Here, sufficient circumstantial evidence established Appellant's identity as the shooter. *See Dunkins, supra*. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence also established each of the elements of first-degree murder. *See Sebolka, supra*; 18 Pa.C.S.A. § 2502(a). Moreover, we decline Appellant's invitation to substitute our judgment for that of the jury, and we conclude that Appellant is not entitled to relief on his weight claim. *See Champney, supra*. Accordingly, Appellant is not entitled to relief on his first two claims.

In his third issue, Appellant contends that the evidence regarding the Philadelphia shooting was not relevant to the Montgomery County offenses.

Appellant argues that the prejudicial effect of his confession to the Philadelphia shooting, in conjunction with the ballistics evidence, outweighed any probative value for this evidence. Moreover, Appellant posits that the Commonwealth did not need evidence of the Philadelphia shooting to establish Appellant's identity as the perpetrator of the Montgomery County offenses where less prejudicial circumstantial evidence achieved this goal. Appellant concludes that the court committed reversible error by admitting evidence of the Philadelphia shooting. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would
>
>> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* "However, bad act evidence is only admissible … '1) if a logical connection

- 12 -

exists between the bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" **Commonwealth v. Herring**, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting **Commonwealth v. Yale**, 665 Pa. 635, 659, 249 A.3d 1001, 1015 (2021)).

Instantly, the trial court determined that the probative value of the evidence regarding the Philadelphia shooting outweighed any unfair prejudice:

> In this case, through the testimony of Detective Nelson, the ballistics evidence established that the firearm used in the Philadelphia shooting, four days prior to the current murder, was also used in this murder. Also, there was evidence that the same Mercury Sable was involved in both murders. Further, Appellant had identified himself as involved in the Philadelphia shooting and as associated with the Mercury Sable. Moreover, Philadelphia police observed that [Appellant] got into and drove the Mercury Sable involved in the Philadelphia shooting. Accordingly, this evidence that [Appellant] was the shooter in the Philadelphia shooting was compelling evidence that he used the same firearm and drove the same car in this murder. Therefore, the probative value of this evidence exceeded the potential for unfair prejudice, especially when [Appellant's] defense was one of identity. All the evidence of the Philadelphia shooting was necessary to establish his identity in this murder. Furthermore, this [c]ourt provided the jury with a cautionary instruction, limiting the potential of prejudice.[5]

_____

[5] Specifically, the court instructed the jury as follows:

> Members of the jury, you're going to be hearing some evidence about some things in Philadelphia. Keep in mind that [Appellant] is not on trial for that incident. The evidence is being admitted for purposes of showing a connection to this particular case, and so you may not use it for any other purpose other than for the purpose of that

*(Footnote Continued Next Page)*

- 13 -

(Trial Court Opinion at 12-13).

We agree with the court's analysis and emphasize that there was a logical connection between the Philadelphia shooting and the instant offenses where: 1) ballistics evidence linked the same firearm to both crimes; 2) the same vehicle was involved in both crimes; and 3) Appellant admitted his involvement in the Philadelphia shooting. ***See Herring, supra***. Accordingly, we cannot say that the court abused its discretion by admitting the prior bad acts evidence. ***See LeClair, supra***.

Appellant's final issue arises from Ms. Jean's counsel's cross-examination of Officer Welton. Specifically, Appellant complains about the question: "And nothing about your investigation on that particular morning suggested to you, sir, that [Ms. Jean] was out there in the Dunkin' Donuts or in any way with [Appellant], right?" (N.T. Trial, 3/18/24, at 70). Appellant asserts that this question presumed facts not in evidence where "Officer Welton had no knowledge that the perpetrator at the Dunkin' Donuts that morning was [Appellant]." (Appellant's Brief at 28). Although his counsel

_____

> indicated to you, and you may not conclude that [Appellant] is a person of bad character or criminal tendencies in which you might be inclined to infer guilt.
>
> As I said, the evidence is admitted for the purpose of connecting the car and [Appellant] to this particular case and not because he's on trial for any event in Philadelphia.

(N.T. Trial, 3/19/24, at 142).

objected to the question, Appellant argues the court's refusal to sustain the objection resulted in prejudice. Appellant maintains that the court should have sustained the objection and provided a cautionary instruction. Without an instruction, Appellant posits that "the jury was free to conclude Appellant was present for the murder before any evidence about that had been submitted." (*Id.* at 29). Appellant concludes that the court's failure to sustain his counsel's objection was not a harmless error. We disagree.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Pa.R.E. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* "It is implicit in Pa.R.E. 602 that the party calling the witness has the burden of proving personal knowledge." Pa.R.E. 602, comment.

"The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." ***Commonwealth v. Thornton***, 494 Pa. 260, 266, 431 A.2d 248, 251 (1981). ***See also Commonwealth v. Yockey***, 158 A.3d 1246, 1254 (Pa.Super. 2017), *appeal denied*, 643 Pa. 686, 174 A.3d 567 (2017) (reiterating that "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless"). The harmless error doctrine "is premised on the well-settled proposition that 'a

defendant is entitled to a fair trial but not a perfect one.'" ***Thornton, supra*** at 266, 431 A.2d at 251 (quoting ***Lutwak v. United States***, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

"The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." ***Commonwealth v. Wright***, 599 Pa. 270, 312, 961 A.2d 119, 143 (2008).

> Harmless error is established where either: 1) the error did not prejudice the defendant; 2) the erroneously admitted evidence was merely cumulative of other untainted evidence; or 3) where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Bishop***, 936 A.2d 1136, 1144 (Pa.Super. 2007), *appeal denied*, 597 Pa. 710, 951 A.2d 1159 (2008).

Instantly, Officer Welton testified that he was on duty at the time of the shooting, he responded to the crime scene, and he saw the victim's body inside her vehicle upon his arrival. The officer did not testify, however, that he observed Appellant at the scene. Thus, Appellant's counsel objected to the question from Ms. Jean's counsel, which implied that Officer Welton had seen Appellant at the crime scene. ***See*** Pa.R.E. 602.

Immediately following the court's ruling on the objection, Appellant's counsel commenced his own cross-examination of Officer Welton. Appellant's counsel asked whether Officer Welton had seen Appellant on the day of the shooting, and the officer responded that he had not. (***See*** N.T. Trial, 3/18/24,

at 71). In light of this exchange, the trial court concluded that Appellant was not prejudiced by the court's refusal to sustain counsel's objection:

> The objectionable question by [Ms.] Jean's counsel was his last question of his cross-examination. And immediately after, [Appellant's] counsel followed up and clarified for the jury that Officer Welton had no knowledge that [Appellant] was present at the Dunkin' Donuts that morning, and that all he knew about the perpetrator was that the perpetrator was male and he drove a silver Taurus.[6] Accordingly, this follow up cross-examination cured any potential prejudice and made clear to the jury that Officer Welton had no knowledge that [Appellant] was at the Dunkin' Donuts that morning.

(Trial Court Opinion at 18).

Our review of the record demonstrates that Officer Welton's answer to the question posed by Ms. Jean's counsel could not have contributed to the verdict. *See Bishop, supra*. We emphasize that the Commonwealth presented overwhelming evidence of guilt, including: 1) Appellant's cell phone containing photos of the victim and directions to her home; 2) location data demonstrating that Appellant's cell phone was outside of the victim's home and followed her to the crime scene; and 3) ballistics evidence linking Appellant to the murder weapon and get-away vehicle. Based upon the foregoing, we are convinced that any error was harmless beyond a reasonable

---

[6] Officer Welton testified that the first person to inform him about the shooting claimed that a Taurus was involved. (*See* N.T. Trial, 3/18/24, at 69). Nevertheless, Detective Murray's subsequent investigation and review of the various surveillance videos revealed that the car involved was actually a Mercury Sable. (*See* N.T. Trial, 3/19/24, at 25).

doubt, and Appellant is not entitled to relief on this issue. *See Thorton, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2025